UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AKBAR JOHNS,

                              *Petitioner,*

          – against –

M. KNOPP,

                              *Respondent.*

**MEMORANDUM & ORDER**
24-cv-05482 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Akbar Johns, who is currently incarcerated at Sing Sing Correctional Facility, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Johns was convicted after a jury trial of one count of second-degree murder and one count of criminal possession of a weapon in the second degree. Appearing pro se, Johns brings this Petition[1] for habeas relief alleging, among other things, that the trial court violated his constitutional and statutory right to be present for all proceedings, that there was legally insufficient evidence to support his murder conviction, and that the prosecution committed misconduct during its summation. For the reasons set forth below, Johns's Petition is denied.

---

[1]     The Court hereinafter refers to the Petition for Writ of Habeas Corpus, ECF No. 1, as the "Petition"; and respondent's Opposition to Petition for a Writ of Habeas Corpus, ECF No. 7, as the "Opposition."

## BACKGROUND

### A. *The Crime and Arrest*

The prosecution presented evidence of the following facts at trial. At around 12:30 a.m. on August 24, 2012, a group of teenage boys were walking in the vicinity of Tapscott Street and Blake Avenue in Brooklyn, New York. Opp'n Ex. A, Trial Transcript ("Tr.") 339:5–25, 341:1–3, ECF No. 7-2.[2] Some of the boys in the group were affiliated with a gang called "Addicted to Cash" ("ATC"). *See* Tr. 340:9–15. The group realized that they were being followed by a group affiliated with a rival gang in the neighborhood, the "Bully" gang. *See* Tr. 340:16–25. A member of the ATC group yelled "what's crackin'" to the Bully group, at which point Akbar Johns—affiliated with the Bully gang—stepped toward the ATC group "with a gun to the side." Tr. 341:3–342:2.

Johns pointed the gun directly toward the ATC group and fired three shots. Tr. 342:8–23, 344:11–14; *see also* Tr. 263:20–264:12, 266:5–10. Johns "stopped firing," "put the hand down with the gun," and walked the opposite way. Tr. 266:10–13. Johns then "tosse[d] the gun in the middle of the street" before leaving the scene. Tr. 266:16–267:5. One of the shots struck a thirteen-year old boy in the group; the bullet first struck his back and travelled into his chest. *See* Tr. 339:19–23, 345:10–11, 346:1–2, 395:21–25. In the immediate aftermath, other boys in the ATC group flagged down officers in a patrol car nearby to tell them someone had been shot. *See* Tr. 58:18–21, 63:11–12, 345:10–346:11, 408:20–409:2. Officers called emergency medical services who arrived on the scene to transport the victim to a hospital; he was pronounced dead shortly after he was taken to the operating room. Tr. 28:8–19, 52:17–53:14.

---

[2] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

Detectives spoke that night to one of the victim's brothers who was with the group during the shooting. Tr. 183:1–190:20. The brother informed the detective that Johns— whom he knew "from the neighborhood," Tr. 341:23—had shot his brother, Tr. 183:1– 190:20. Over the next few days officers unsuccessfully attempted to locate Johns, but disseminated John's information to nearby police departments. Tr. 202:8–19, 204:2–19. On September 2, 2012, Johns was located and arrested at an address in Cumberland, Maryland by the Maryland Police Department. *See* Tr. 204:24–206:5. NYPD detectives went to Maryland the following day to speak with Johns, who agreed to speak with the detectives. Tr. 206:4–207:10. In statements to detectives—both written and oral—Johns admitted that he had committed the shooting but stated that he "did not mean to shoot anybody," but instead was "trying to get them away from me." Tr. 217:25–218:1. Johns was arrested shortly thereafter. Tr. 219:2–13.

Johns was held in pretrial detention at Rikers Island. While detained at Rikers, Johns made several phone calls, three of which were recorded and were later played at trial. *See* Tr. 371:20–379:7. The recordings of the calls indicated that Johns told individuals that the ATC gang had been "threatening [his] family," and that the shooting happened "in the heat of the moment" because the ATC gang "was not running," but that the shooting itself was not planned. Opp'n Ex. C, People's Appellate Division Br. 19, 21, ECF No. 7-4.

### B. Trial & Deliberations

At trial, the prosecution presented evidence of the crime through various eyewitness testimony, crime scene photographs, and ballistics evidence. Most important to the issues raised by the Petition, the prosecution introduced recordings of Johns's calls from Rikers into evidence. *See* Tr. 371:20–379:7. In addition, the prosecution also had

3

transcripts of the recordings in the courtroom to assist the jury in "follow[ing] along[.]" Tr. 372:22–23. The trial court cautioned, however, that the transcripts were simply an "aid for [the jury] to understand the phone call, but it [was] the phone call itself that [was] in evidence," not the transcripts. Tr. 372:23–373:4.

Immediately after the jury charge the trial court informed the parties that "if [the jury] ask[ed] for anything [in evidence]" during deliberations, the court would send the exhibits to the jury room without reconvening with the parties in court. Tr. 511:21–23. Neither party objected to that procedure, and the jury began deliberating. Tr. 511:21–512:7. After the jury was discharged from its first day of deliberations, the court and counsel discussed scheduling for the following day. The court informed defense counsel that he could arrive "later in the morning" because "we can't do anything until your client gets produced[,] [and] [h]e is getting produced around 11, 11:15." Tr. 525:5–14. Defense counsel asked if he should be available at 11:00 a.m., and the court replied that would be appropriate because, "that way, if there is a [jury] note, we can discuss it while we're waiting for your client to be produced." Tr. 525:16–18. Defense counsel did not lodge an objection to that approach. *See* Tr. 525:19.

The following morning the court went on the record and noted that it had "received [two] jury notes, one at 10:30 and one at 11:35." Tr. 527:16–17. Johns had not yet been produced, but "[b]oth notes were shown to [c]ounsel and discussed." Tr. 527:16–17. The court stated that "[t]he first note indicated that [the jury] would like to hear the tapes from Riker's and the transcripts, if possible," as well as all photos and diagrams of the crime scene. Tr. 527:18–21. The court explained that it sent the photos, diagrams, and Rikers tapes to the jury room after discussing the matter with counsel. Tr. 527:22–528:1. The court noted, however, that it did not send the transcripts to the jury because it

4

"couldn't do that because the defendant had not yet been produced[.]" Tr. 528:3–4. The court indicated that instead it would "wait to see whether or not" the jury asked for the transcripts again after defendant was produced. *See* Tr. 528:5–529:13. Defense counsel lodged an objection to the transcripts "being seen at all" in case there were any errors with the transcripts. Tr. 529:16–530:16. However, shortly after defense counsel raised its objection—and before the jury reprised the request—the court was notified that the jury reached a verdict. Tr. 530:17–18. On January 20, 2016, the jury announced a verdict of guilty on one count of murder in the second degree and one count of criminal possession of a weapon. Tr. 531:18–25. On February 5, 2016, the Supreme Court of Kings County imposed a sentence of twenty years to life on the murder conviction, and ten years on the weapon possession conviction, both to run concurrently. Tr. 544:11–17.

### C. Direct Appeal

On June 17, 2022, Johns perfected a direct appeal to the Second Department with the assistance of counsel. His appeal was based on three main grounds: (1) that the trial court erred in handling the jury note by (i) responding to the note without petitioner present, and (ii) responding to only part of the note; (2) that there was legally insufficient evidence to support petitioner's conviction, specifically due to the lack of evidence of intent to kill; and (3) that his prison sentence of twenty years to life was excessive. *See* Opp'n Ex. B ("Appellant's Br.") 24, 31, 38, ECF No. 7-3. The appeal also contended that the prosecution "engaged in misconduct" by "denigrating" Johns to the jury during summations by "implying [that] he had no remorse, and that he was laughing and bragging" about the killing. Appellant's Br. 27 n.15.

The Second Department unanimously affirmed Johns's judgment of conviction on November 30, 2022. *See People v. Johns*, 178 N.Y.S.3d 782 (2d Dep't 2022). The court

found that there was "no merit to the defendant's contention" that the trial court violated his right to be present during all stages of trial when it responded to a portion of the jury note requesting evidentiary exhibits in his absence. *Id.* at 783. The court noted that Johns's counsel agreed beforehand that the trial court could "furnish the jury with exhibits upon its request without reconvening." *Id.* The Second Department also rejected petitioner's argument that there was legally insufficient evidence to support his conviction. After conducting an independent review of the record and "accord[ing] great deference to the jury's opportunity to view the witnesses, hear testimony, and observe demeanor," the court concluded that petitioner's conviction was not against the weight of the evidence and that his intent to kill the victim "could be inferred from the totality of his conduct and the surrounding circumstances." *Id.* Finally, the court found that petitioner's challenge regarding comments made by the prosecution during summation was "unpreserved for appellate review and, in any event, without merit." *Id.*

Shortly thereafter Johns sought leave, through counsel, to appeal the Appellate Division's decision to the New York Court of Appeals. *See* Opp'n Ex. D ("COA Application") 5–10, ECF No. 7-5. Petitioner's application primarily sought leave to appeal based on a violation of his right to be present at all stages of his criminal proceedings. *See* COA Application 10. The COA Application did, however, request in a footnote "that th[e] [c]ourt also grant leave on the issue of legal insufficiency" if it granted leave on "the issue of whether the jury note was meaningfully responded to[.]" COA Application 8 n.2. Judge Rivera denied the application on March 1, 2023. *See People v. Johns*, 39 N.Y.3d 1111 (2023).

6

*D. District Court Proceedings*

Johns, proceeding pro se, filed the instant petition on July 22, 2024.[3] Pet. 14. Construed liberally, his petition raises three main grounds for habeas relief: (1) petitioner was denied his constitutional right to be present for all criminal proceedings because the court responded to a jury note while he was not present, Pet. 5; (2) there was legally insufficient evidence to support a conviction of murder in the second degree, specifically because the prosecution did not present any evidence of intent, Pet. 6; and (3) the prosecution committed misconduct during summations at trial by making prejudicial statements directed at the emotions and fears of the jury, Pet. 8.

---

[3]    Respondent argues that the Petition is barred by AEDPA's statute of limitations because it was filed more than one year after petitioner's conviction became "final." Opp'n 10; *see also* 28 U.S.C. § 2244(d)(1)(A). Petitioner does not meaningfully dispute that the Petition was filed outside the limitations period. Instead, he urges the Court not to dismiss the Petition as untimely because, among other things, "special and equitable reasons" warrant examination of the merits of his claims. Pet. 13. Specifically, Johns alleges that New York State's Department of Corrections ("DOCCS"), "destroy[ed] documents" related to his Petition. *See* Pet. 13. AEDPA's limitations period is not jurisdictional and therefore equitable tolling is available in "rare and exceptional circumstances." *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010). And the Second Circuit has squarely held that "[t]he intentional confiscation of a prisoner's habeas corpus petition and related legal papers by a corrections officer is 'extraordinary' as a matter of law." *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000). Still, equitable tolling is not warranted unless the petitioner demonstrates that the extraordinary circumstances "prevented him from filing his petition on time," which in turn "requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Id.* (emphasis omitted). The Petition only alleges that "DOCCS destroyed documents" and provides no further detail, including how long the alleged destruction of documents delayed the filing of the Petition or whether petitioner made reasonably diligent efforts to timely file his Petition notwithstanding. *See* Pet. 13. Thus, the Court is unable to determine based on the current factual record whether equitable tolling is warranted in this case. Nevertheless, because the Court concludes that petitioner fails to demonstrate that habeas relief is warranted based on the merits of his claims, the Court need not decide whether equitable tolling is appropriate here.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *Fox v. Bezio*, No. 10-cv-02986, 2011 WL 837158, at *5 (E.D.N.Y. Mar. 7, 2011) (citing 28 U.S.C. § 2254(d)). Under AEDPA, federal habeas relief is available when "a person in custody pursuant to the judgment of a State court . . . is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas relief is only available for a violation of federal law, as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).[4]

AEDPA provides that an "application for a writ of habeas corpus . . . pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings," unless adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2). A decision on the merits is "contrary to . . . clearly established" federal law if the state court (1) arrives at a conclusion opposite to one reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Jones v. Perez*, No. 14-cv-03971, 2015 WL 5923548, at *4 (E.D.N.Y. Oct. 10, 2015) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state

---

[4]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

8

court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct controlling legal principle announced by the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case. *Id.* (citing *Williams*, 529 U.S. at 407). This deferential standard of review, known as "AEDPA deference," "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011).

AEDPA deference applies only to federal claims "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). Merits adjudication occurs when a state court "disposes of the claim on the merits" and "reduces its disposition to judgment." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007). When multiple state courts consider a case, including on direct appeal, the Court reviews the last state court decision that explained its reasoning, even if a higher court reviewed the case. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

When there has been an adjudication on the merits, AEDPA deference "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). In practice, this means that a district court may not overturn a state court's application of federal law if it is merely incorrect, but only if it is objectively "unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In other words, a district court may overturn a state court's application of federal law only if it is "so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents."

*Baez v. Royce*, No. 20-cv-01669, 2024 WL 2022090, at \*8 (E.D.N.Y. May 3, 2024) (quoting *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013)).

The Court is obliged to construe pro se pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983). Nevertheless, a pro se litigant is not exempt "from compliance with relevant rules of procedural and substantive law." *Williams v. People*, No. 23-cv-10027, 2024 WL 421130, at \*1 (S.D.N.Y. Jan. 4, 2024) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

The Petition raises three grounds for relief. First, petitioner asserts that his constitutional right to be present at his criminal proceedings was violated when the trial court "responded to a jury note in part while defendant was not present[.]" Pet. 5. Second, petitioner alleges that there was insufficient evidence to support his murder conviction because the prosecution "did not present any evidence to support intent" or that petitioner "acted with intent to kill." Pet. 6. Third, petitioner asserts that the prosecution committed misconduct during its summation by "play[ing] on [the] emotions and fears of jurors." Pet. 8.

### I.      Ground One: Right to be Present

Johns asserts that the trial court violated his right to be present at all stages of his criminal proceedings by responding to a jury note "in part while defendant was not present." Pet. 5. In petitioner's view, the court "could not respond to [the] jury note in it[s] totality without defendant's consent"—consent which was not obtained given Johns's absence while the jury note was read and responded to by the trial court. Pet. 5. Petitioner

10

raised this ground for relief both in his direct appeal to the Second Department and in his application seeking leave to appeal to New York's Court of Appeals. Appellant's Br. 15–22; COA Application 8–10. Therefore, this ground for relief is properly preserved for habeas review. *See Diguglielmo v. Senkowski*, 42 F. App'x 494, 494 (2d Cir. 2002) (summary order).

"A defendant in a criminal case has the right, rooted in the Sixth Amendment Confrontation Clause and Fifth Amendment Due Process Clause, to be present at every trial stage." *United States v. Mehta*, 919 F.3d 175, 180 (2d Cir. 2019). This right, "however, is not absolute." *United States v. Ingrao*, No. 23-7687, 2025 WL 1261696, at *2 (2d Cir. May 1, 2025) (summary order). Instead, the right to be present applies only to those trial stages where a criminal defendant's absence "might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975); *see United States v. Tureseo*, 566 F.3d 77, 83 (2d Cir. 2009) ("[T]he constitutional right to be present at one's own trial exists at any stage of the criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure."); *Kirk v. Burge*, 646 F. Supp. 2d 534, 548 (S.D.N.Y. 2009) (explaining that the right to be present "is implicated only where the defendant's presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge [and] applies where fairness and justice would be thwarted by the defendant's absence, and to that extent only"). Moreover, a defendant's right to be present may be waived, "either expressly or implicitly." *Frederick v. United States*, No. 14-cv-04216, 2019 WL 7293407, at *11 (E.D.N.Y. Dec. 30, 2019); *see also United States v. Fontanez*, 878 F.2d 33, 36 (2d Cir. 1989) ("Although trial courts must vigorously safeguard a criminal defendant's right to be present, a defendant may expressly or effectively waive the right.").

11

In addition to constitutional guarantees, New York Criminal Procedure Law Section 310.30 codifies certain protections with respect to a criminal defendant's right to be present. Specifically, the statute provides that, upon a request from the jury during deliberations, "the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper." N.Y. C.P.L. § 310.30

Petitioner argues that his right to be present was violated when the trial court "responded to a jury note in part while [petitioner] was not present." Pet. 5. Specifically, petitioner takes aim at how the trial court handled a jury note received during the morning of the second day of deliberations. *See* Opp'n 12; *see also* Appellant's Br. 22. That morning, before petitioner had been produced to the court, the trial court "received two [jury] notes." Tr. 527:16.[5] One of the notes, which was shown to counsel, included a request to hear "the tapes from Riker's and the transcripts," as well as photographs and diagrams of the crime scene. Tr. 527:18–21. The court stated on the record that it sent the crime scene photos, diagrams, and tapes from the Rikers calls to the jury room. *See* Tr. 527:22–528:1. However, "because [petitioner] was not produced," the trial court explained that it "couldn't" send the transcripts to the jury room because the transcripts were not in evidence. *See* Tr. 528:1–4; *see also* Opp'n 12. The court explained that it would

---

[5]      The second note from the jury requested whether they could "take a 15-minute break." Tr. 528:7–8. That note also was discussed with counsel, who agreed to allow the jurors to take a break while accompanied by court officers. Tr. 528:8–13. Petitioner does not allege any constitutional infirmities with how the trial court handled this note. *See generally* Pet.

wait and see if the jury asked again for the transcripts after petitioner was produced. *See* Tr. 528:3–6.

The Second Department determined that petitioner's claim that the trial court's handling of the jury note violated his right to be present under the Constitution and N.Y. C.P.L. § 310.30 had "no merit[.]" *Johns*, 178 N.Y.S.3d at 783. The court explained that petitioner's trial counsel "agreed that the court could furnish the jury with exhibits upon its request without reconvening" before deliberations. *Id.* And "[w]here a defendant consents beforehand, a court may furnish the jury with evidentiary exhibits without reconvening." *Id.* (quoting *People v. Cooper*, 142 N.Y.S.3d 854 (Mem) (2d Dep't 2021)). For purposes of the instant Petition, Johns is not entitled to relief unless this determination was "contrary to, or involved an unreasonable application of, clearly established [f]ederal law." 28 U.S.C. § 2254(d)(1).

The Court concludes that the Second Department's decision was not contrary to clearly established federal law. At the outset, to the extent that petitioner raises a claim for a violation of N.Y. C.P.L. § 310.30: "[t]he Court cannot grant relief based on this state law argument." *Feliciano v. Lee*, No. 18-cv-09591, 2020 WL 5076865, at *10 (S.D.N.Y. Aug. 26, 2020) (rejecting argument that trial court's failure to reconvene the parties in violation of N.Y. C.P.L. § 310.30 was sufficient grounds for habeas relief because such a claim was predicated on state law) (collecting cases); *Osborne v. Graham*, No. 15-cv-06042, 2018 WL 1827673, at *13 (W.D.N.Y. Apr. 17, 2018) ("Insofar as [the] [p]etitioner is nevertheless alleging a violation of New York Criminal Procedure Law § 310.30, such a violation does not provide a basis to grant habeas relief."), *appeal dismissed*, Nos. 18-1482, 18-1623, 2018 WL 6016548 (2d Cir. Oct. 11, 2018).

13

Petitioner's contention that the Second Department unreasonably applied federal law in determining that his constitutional right to be present was not violated fails as well. The Second Circuit has explained that "[t]he right to be present has been extended to require that messages from a jury should be disclosed to *counsel* and that counsel should be afforded an opportunity to be heard before the trial judge responds." *Mehta*, 919 F.3d at 180 (emphasis added). The record indicates that the trial court followed that procedure in petitioner's trial as it pertains to the allegedly mishandled jury note. *See* Tr. 527:16–17 ("We received two notes, one at 10:30 and one at 11:35. Both notes were shown to [c]ounsel and discussed."). Moreover, it is not clearly established federal law that the right to be present is implicated when a jury note is read and responded to by a trial court where, as here, the note requests materials already admitted into evidence.[6] *See Feliciano*, 2020 WL 5076865, at *9–10 (observing that "there is no Supreme Court case establishing [a defendant's] right to respond to a jury note" where the court "sen[t] an exhibit into the jury room without reconvening the parties, reading the parties the [j]ury [n]ote, and allowing them to respond"); *Baker v. Superintendent, Coxsackie Corr. Facility*, No. 19-cv-06218, 2023 WL 203359, at *9–10 (W.D.N.Y. Jan. 17, 2023) (same); *James v. Lempe*, No. 11-cv-03003, 2013 WL 7702256, at *5 (S.D.N.Y. June 14, 2013) ("Because the

---

6       The jury note also requested certain materials that were not already evidence, specifically, transcripts of the recordings of the Rikers calls. Tr. 527:18–21. But it was precisely because those materials were not admitted into evidence that the trial court refused to respond to that part of the jury's request in the absence of defendant's presence. *See* Tr. 516:1–6 ("[H]owever, because the defendant was not produced and the transcripts which were used to assist the jury were [not admitted into evidence], we couldn't do that because the defendant had not yet been produced[.]"); *see also* Tr. 528:21–529:5 (explaining that it "wasn't possible" to respond to the jury note's request for the transcripts because petitioner had not yet been produced). For this reason, to the extent that petitioner argues that that the trial court's "part[ial]" response to the jury constituted a mode of proceeding or constitutional error, *see* Pet. 5, this argument fails.

14

Supreme Court has not clearly established that more than notice and an opportunity to object is required when faced with a jury's inquiry, [the petitioner's] mode of proceeding claim cannot prevail on the merits."), *report and recommendation adopted*, 2014 WL 726659 (Feb. 25, 2014); *see also Herring v. Miller*, No. 22-cv-06693, 2025 WL 317547, at \*10 (E.D.N.Y. Jan. 28, 2025).

Indeed, "[t]he Second Circuit has held that a defendant's right to be present at trial is not violated when the defendant is absent when exhibits previously received in evidence are displayed to the jury." *Salley v. Graham*, No. 07-cv-00455, 2008 WL 818691, at \*4 (S.D.N.Y. Mar. 27, 2008); *see also Monroe v. Kuhlman*, 433 F.3d 236, 247 (2d Cir. 2006) ("[W]e have held that due process is not violated where a court provides transcripts of testimony to the jury outside the defendant's presence during jury deliberations."); *U.S. ex rel. Spinney v. Fay*, 228 F. Supp. 500, 500–01 (S.D.N.Y. 1964) ("The submission of exhibits, admitted in evidence, to a jury upon its request, with the consent of [the] defendant's counsel but in the absence of [the] defendant, did not violate [the] defendant's [f]ederally protected right to due process[.]"); *accord United States v. Holton*, 116 F.3d 1536, 1545–46 (D.C. Cir. 1997) (reasoning that a trial judge's transmission of evidence to jury outside the presence of the defendant does not violate the defendant's Sixth Amendment right to be present).

The lack of authority supporting the applicability of the right to be present in these circumstances corresponds with a core principle of that right: it is triggered "only when the defendant's presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002). Petitioner fails to explain how his presence when the trial court responded to a jury note requesting certain materials already in evidence would have had any

15

reasonable relation to his opportunity to respond to the charges against him, much less a substantial one. *See Kotler v. Woods*, 620 F. Supp. 2d 366, 387 (E.D.N.Y. 2009) ("[T]he [c]ourt rejects [the] petitioner's claim that the trial court's handling of jury notes violated his constitutional right to be present. He has failed to show any absence that had any relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.").

Moreover, as the Second Department observed in its order affirming petitioner's conviction, the trial court informed defense counsel—prior to deliberations and without objection—that it would "furnish the jury with exhibits upon its request without reconvening." *Johns*, 178 N.Y.S.3d at 783; *see also* Tr. 511:21–23 ("As for evidence, if [the jury] ask[s] for anything, we will send it in without reconvening in court."). Indeed, trial counsel did not object to the court's response to the allegedly mishandled jury note, nor did counsel object to the court sending the jury the exhibits. *See* Tr. 527:16–528:14. Thus, petitioner fails to demonstrate that his counsel was not afforded the opportunity to be heard before the court responded to a jury note, and therefore fails to demonstrate that his right to be present was implicated. *See Mehta*, 919 F.3d at 180; *see also Osborne*, 2018 WL 1827673, at *13 ("The claim that the trial court erred by failing to give proper notice that it had received a note from the jury, requesting exhibits . . . that were in evidence, also fails to provide a basis for habeas relief. In the first place, the parties had agreed that the court could provide the jury with any requested exhibits, without reconvening the parties in the courtroom."); *Kirk v. Burge*, 646 F. Supp. 2d 534, 548–49 (S.D.N.Y. 2009) (concluding that claim "that the trial judge committed constitutional error by giving the jury evidence it requested without consulting the parties" failed to support habeas relief where "the court had informed all parties by means of the jury charge that one or more or

all of the exhibits received in evidence would be sent to the jury upon request" and the petitioner's "trial counsel did not object to this charge").

Even assuming that the trial court violated petitioner's constitutional rights by responding to the jury note in his absence, "any violation of this right is subject to harmless error review." *Herring*, 2025 WL 317547, at *10; *see also Feliciano*, 2020 WL 5076865, at *11 ("Any violation of a defendant's Sixth Amendment right to have counsel apprised of and given an opportunity to respond to every jury note—assuming a defendant has such a right—is subject to harmless error review."). And here, petitioner "has not identified what he . . . would have done had [he] been informed of the jury note" nor "has he pointed to any actual prejudice he suffered as a result of the trial court's actions." *Herring*, 2025 WL317547, at *10. Therefore, petitioner is not entitled to habeas relief on this ground.

## II.    Ground Two: Insufficiency of the Evidence

As a second ground for relief, Johns asserts that there was insufficient evidence to support his conviction of murder in the second degree because the prosecution "did not present any evidence to support intent or that the defendant acted with intent to kill." Pet. 6. As a threshold matter, respondent argues that this ground is procedurally defaulted because petitioner did not raise this claim in his COA Application. Opp'n 13. The Court disagrees. Johns's application for leave to appeal to New York's Court of Appeals requested, in addition to leave on the jury note issue, that the court "grant leave on the issue of legal insufficiency on his conviction for murder in the second degree." COA Application 8 n.2. Moreover, the record indicates that petitioner's counsel submitted the brief from his Appellate Division appeal—which clearly articulated petitioner's legal insufficiency argument—to the Court of Appeals. *See* COA Application 2; *see also*

*Galdamez v. Keane*, 394 F.3d 68, 76 (2d Cir. 2005) (concluding that federal claim was properly preserved where leave application to New York Court of Appeals requested "further appellate review of all issues in the attached briefs," and the attached briefs "fairly presented the federal claims"); *Ramirez  v. Att'y Gen.*, 280 F.3d 87, 97 (2d Cir. 2001) ("References to attached briefs . . . will preserve issues . . . if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal.").

Nevertheless, this ground for relief fails because petitioner fails to demonstrate that the Second Department's conclusion that there was "legally sufficient evidence to establish the defendant's guilt . . . beyond a reasonable doubt," *Johns*, 178 N.Y.S. at 783, amounted to an unreasonable application of clearly established federal law, or an "unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding," 28 U.S.C. §§ 2254(d)(1)–(2).

When evaluating habeas claims challenging the evidentiary sufficiency of a state court conviction, a federal court must "review the evidence in the light most favorable" to the prosecution. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). A petitioner must show that "upon the record evidence adduced at the trial[,] no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Wilson v. Capra*, No. 20-4140, 2023 WL 7179268, at *2 (2d Cir. Nov. 1, 2003) (summary order) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)). Additionally, because deference is given to jury determinations on direct appeal and deference is given to state court decisions on habeas review, "sufficiency challenges face a high bar[.]" *Id.*; *see Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (explaining that legal insufficiency challenges "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference"). Indeed,

the Second Circuit has noted that a petitioner "bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *Ponnapula*, 297 F.3d at 179.

Petitioner fails to meet that heavy burden here. The Petition alleges that there was insufficient evidence to establish that Johns had the intent to kill beyond a reasonable doubt. *See* Pet. 6. The Second Department disagreed based on its "independent review of the weight of the evidence" in the record. *Johns*, 178 N.Y.S.3d at 783. Specifically, the court concluded that petitioner's "intent to kill the victim could be inferred from the totality of his conduct and the surrounding circumstances." *Id.*

Petitioner fails to show that this conclusion was unreasonable in light of the evidence adduced at trial. Under New York law, a person is guilty of murder in the second degree when, "[w]ith intent to cause the death of another person, he causes the death of such person." N.Y. Penal Law § 125.25(1); *see Ponnapula*, 297 F.3d at 179 ("When considering the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime."). And the New York Court of Appeals "has consistently held that the intent to kill can be inferred from both a defendant's conduct and surrounding circumstances." *Moore v. Att'y Gen.*, No. 17-cv-00474, 2019 WL 3717580, at *16 (E.D.N.Y. Aug. 7, 2019) (citing *People v. Bracey*, 41 N.Y.2d 296, 301 (1977)). For instance, a juror may infer intent to kill when a defendant repeatedly shoots in the victim's direction. *Brown v. Rivera*, No. 06-cv-06274, 2009 WL 2222908, at *14 (W.D.N.Y. July 23, 2009) (collecting cases). Similarly, a juror may infer intent from a defendant's conduct "before and after [a] shooting." *Hernandez v. Artus*, No. 09-cv-05694, 2020 WL 2769404, at *5 (E.D.N.Y. May 28, 2020); *see also People v. Reese*, 87 N.Y.S.3d 711, 714 (3d Dep't 2018).

Here, the prosecution presented ample evidence from which a rational juror could have inferred intent. Multiple eyewitnesses testified that they observed and heard petitioner fire several gunshots toward a group of boys affiliated with the ATC gang. Tr. 263:18–22, 266:9–12, 342:20–23, 344:11–14. Additional witness testimony indicated that Johns was affiliated with a rival gang that "ha[d] a beef, a friction" with ATC. *See* Tr. 340:1–342:2. The prosecution played audio recordings of petitioner's phone calls while at Rikers following his arrest in which petitioner claimed that the ATC gang had made certain threats to his "family," and that he was his gang's enforcer. *See* Affirmation in Opp'n to Pet. ¶ 5, ECF No. 7; *see also* Tr. 375:19–377:21; Opp'n 14–15. And in a written statement given to detectives, petitioner stated that he "had [his] .38 on [him]," saw the group of boys and "took out the gun from [his] right pocket and cocked the hammer" but "nobody was afraid," and he then fired multiple shots in the direction of the boys. *See* Tr. 217:7–25. This evidence, in the light most favorable to the prosecution, was sufficient for a rational juror to infer intent to kill. *See Cabrera v. New York*, No. 10-cv-04440, 2013 WL 5205613, at *6 (E.D.N.Y. Sep. 12, 2013) (reasoning that a rational juror could conclude that the petitioner had intent to kill where the prosecution presented evidence including eyewitness testimony that the "victim and [the] petitioner f[ought] two (2) days before the shooting," and evidence of the petitioner's "self-incriminating statements"); *see also People v. Lopez*, 946 N.Y.S.2d 780, 781 (4th Dep't 2012) (concluding that there was legally sufficient evidence to establish intent to kill where the prosecution "presented evidence that [the] defendant and the victim quarreled immediately before the shooting and that [the] defendant was only a few feet away from the victim when [the] defendant pointed a gun at him and then fired that weapon"); *accord Burton v. Wolcott*, No. 21-cv-00736, 2024 WL 3184658, at *14 (N.D.N.Y. May 29, 2024) ("[T]he firing of three

20

gunshots at two individuals would be sufficient evidence to support both attempted murder charges."), *report and recommendation adopted*, 2024 WL 3183183 (June 26, 2024).

Therefore, petitioner fails to demonstrate that the Second Department's conclusion that there was legally sufficient evidence to establish his guilt was an unreasonable determination of the facts or otherwise contrary to clearly established law. Accordingly, petitioner is not entitled to habeas relief on this ground.

### III.    Ground Three: Prosecution's Summation Comments

As a third ground for relief, Johns claims that the prosecution committed misconduct during its summation because the prosecutor "made prejudicial comments that played on emotions and fears of jurors." Pet. 8. However, this ground is procedurally barred from habeas review because, unlike grounds one and two, petitioner did not include prosecutorial misconduct as a ground for relief in his application seeking leave to appeal to the Court of Appeals. *See generally* COA Application; *see also Casseus v. Griffin*, No. 16-cv-00728, 2020 WL 1434141, at *7 (E.D.N.Y. Mar. 23, 2020) ("[The] petitioner omitted this claim from his application for leave to appeal to the Court of Appeals, so it is unexhausted, and therefore cannot be the basis for a grant of habeas relief."); *Knight v. Colvin*, No. 17-cv-02278, 2023 WL 3073648, at *7 (E.D.N.Y. Apr. 24, 2023) ("[B]ecause [the petitioner] failed to include his sufficiency-of-the-evidence claim in his application for leave to appeal to the New York Court of Appeals, it is procedurally defaulted."). Indeed, in contrast to the jury note and sufficiency of the evidence issues, the prosecutorial misconduct issue was briefly referenced in petitioner's Appellate Division brief but omitted in his letter seeking leave to appeal to the Court of Appeals. *See* Appellant's Br. 27 n.15; *see also Cotto v. Superintendent Michael Capra*, No. 20-cv-

06025, 2021 WL 7183939, at *11 (S.D.N.Y. May 3, 2021) ("Where, as here, [the] [p]etitioner argues only certain claims in his application for leave to appeal to the Court of Appeals without reference to another, except by attaching the Appellate Division briefs, the unstated claim is not exhausted."), *report and recommendation adopted*, 2022 WL 561668 (Feb. 24, 2022); *see also Sparks v. Burge*, No. 06-cv-06965, 2012 WL 4479250, at *5 (S.D.N.Y. Sep. 28, 2012) (adopting report and recommendation) (holding that habeas claim was procedurally barred where raised on direct appeal to Appellate Division but not included in leave application to Court of Appeals).

Even if this ground was not procedurally barred, it still would not warrant habeas relief. Petitioner asserts that the prosecution engaged in misconduct during summation by "play[ing] on emotions and fears of the jurors." Pet. 8. In particular, petitioner seems to take issue with the prosecutor's comments implying that petitioner had "[n]o regrets, [and] no remorse" about the shooting, Tr. 477:24–25, and that petitioner was laughing and bragging "about taking a 13-year-old's life," Tr. 475:9–11. *See* Appellant's Br. 27 n.15. In the context of habeas review, the prosecution has "wide latitude" in making its closing argument. *Clanton v. Lee*, No. 14-cv-06024, 2015 WL 5693718, at *3 (E.D.N.Y. Sep. 27, 2015) (citing *United States v. Casamento*, 887 F.2d 1141, 1189 (2d Cir. 1989)). Moreover, "[e]ven where a prosecutor has made improper comments in summation, habeas relief is not warranted unless those remarks rendered the trial, as a whole, fundamentally unfair." *Huertas v. Annucci*, No. 23-cv-02371, 2023 WL 3687962, at *4 (E.D.N.Y. May 26, 2023) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181–83 (1986)). That is, "unless the prosecutor[']s[] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process, habeas relief is not warranted." *Umoja v. Griffin*, No. 11-cv-00736, 2014 WL 2453620, at *19 (E.D.N.Y. May 29, 2014) (adopting report and

22

recommendation); *see also Huertas*, 2023 WL 3687962, at *4 ("To be entitled to habeas relief, a petitioner must show that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.").

Petitioner plainly fails to meet this burden. For one, to the extent that the prosecution characterized petitioner as "laughing and bragging" about the killing, such comments were made at least in part to describe petitioner's tone and behavior on the Rikers calls played for the jury and admitted into evidence. *See* Tr. 477:16–19. More importantly, petitioner fails to demonstrate that these comments were so egregious as to infect the entire trial and render it unfair. Indeed, numerous courts have concluded that comments arguably worse than the prosecution's "no remorse" comments here did not merit habeas relief. *See, e.g.*, *Jackson v. Conway*, 763 F.3d 115, 149 (2d Cir. 2014) (reversing grant of habeas relief on prosecutorial misconduct claim where the prosecution referred to the petitioner as "twisted and sadistic"); *Darden*, 477 U.S. at 179–81 (endorsing lower court's reasoning that the prosecutor's comments during summation, including that the petitioner should be "blown away by a shotgun," "reflect[ed] an emotional reaction to the case [and] undoubtedly were improper," but nevertheless "did not deprive [the] petitioner of a fair trial"). Thus, the Second Department's determination that petitioner's challenge to comments made by the prosecution was "without merit," *Johns*, 178 N.Y.S. at 783, was not an unreasonable determination based on the facts or otherwise contrary to clearly established federal law. Therefore, even if this ground were not procedurally barred, it too would not warrant habeas relief.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and the case is dismissed. As Johns has failed to make a substantial showing that he was denied any constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c).

Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal taken from this decision and order would not be taken in good faith and therefore in forma pauperis status is denied for purposes of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to enter judgment and mark the case as closed.

**SO ORDERED.**

  /s/ Natasha C. Merle
NATASHA C. MERLE
United States District Judge

Dated:       March 2, 2026
             Brooklyn, New York

24